**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MIMEDX GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | |
| VIVEX BIOMEDICAL, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff MiMedx Group, Inc. ("MiMedx" or "Plaintiff") files this Complaint against Defendant Vivex Biomedical, Inc. ("Vivex" or "Defendant") and, in support thereof, alleges as follows:

## NATURE AND BASIS OF ACTION

1. This is a civil action for Vivex's infringement of United States Patent No. 8,709,494 ("'494 Patent" or "Patent-in-Suit"). This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*

2. MiMedx seeks, among other things, temporary, preliminary and permanent injunctive relief, monetary damages, punitive damages, and recovery of MiMedx's costs and reasonable attorneys' fees incurred in connection with this action.

## PARTIES

3. Plaintiff MiMedx is a corporation organized and existing under the laws of the State of Florida. MiMedx is registered to do business in the State of Georgia and maintains its headquarters and principal place of business at 1775 West Oak Commons Court, Marietta, Georgia 30062.

4. Upon information and belief, Defendant Vivex is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1755 West Oak Parkway, Suite 200, Marietta, Georgia 30062.

5. Upon information and belief, Vivex is a biomaterials manufacturer and developer that is in the business of developing, marketing, distributing, offering to sell, and selling placental tissue graft products including Cygnus Solo™ and Cygnus™ in the United States.

6. Upon information and belief, at least one version or iteration of the Cygnus Solo™ and Cygnus™ tissue graft products is made by Texas Human Biologics, Ltd. ("THB") and/or Tissue Transplant Technology, Ltd. ("Tissue Transplant") d/b/a Bone Bank Allografts (collectively, "Bone Bank"), and, in turn, distributed by Vivex.

7. Upon information and belief, Vivex is a manufacturer and/or distributor of amnion-based allografts and is in the business of, among other

things, marketing, distributing, offering to sell, and selling placental tissue graft products, including but not limited to Cygnus™, in the United States.

8. Multi-layered placental tissue graft products comprising one or more layers of amnion, including but not limited to Cygnus™, are made by Bone Bank and, in turn, distributed by Vivex.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the United States Patent Act, 35 U.S.C. §§ 100 *et seq.*

10. This Court has personal jurisdiction over Vivex because Vivex transacts business within the State of Georgia including, but not limited to, contracting to supply goods or services in the State of Georgia, engaging in acts of patent infringement within the State of Georgia, engaging in acts outside the State of Georgia causing injury within the State, and engaging in tortious acts within the State of Georgia. Vivex has purposefully and voluntarily placed its product(s), or caused its product(s) to be placed, into the stream of commerce with the expectation that it will be purchased by consumers in this District. As such, Vivex has established minimum contacts with the forum such that the exercise of

jurisdiction over Vivex would not offend traditional notions of fair play and substantial justice.

11. This Court has personal jurisdiction over Vivex because Vivex has continuous and systematic contacts within this State. Vivex: (1) has a corporate presence in this State, including an office, real property, personal property, and employees; (2) intentionally and actively markets and provides its placental tissue-based products including Cygnus to residents of this State; (3) maintains an active sales force in this State; and (4) enjoys substantial revenues from sales of its products and services in this State.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400.

## BACKGROUND

### I. MIMEDX AND ITS PRODUCTS

13. MiMedx develops, manufactures and markets innovative and unique regenerative bioactive products and bio-implants processed from human placental amniotic membrane.

14. MiMedx has been manufacturing and distributing its innovative and unique bioactive healing products and devices for tissue regeneration since at least 2008.

15. In 2011, MiMedx acquired Surgical Biologics LLC, expanding MiMedx's business by adding allografts and other products processed from human amniotic membranes to MiMedx's existing medical device product lines. MiMedx has distributed over 225,000 amniotic tissue grafts to patients in need thereof and achieved significant clinical outcomes in multiple therapeutic areas including, but not limited to, the fields of ophthalmology, spinal surgery, chronic wound treatment, dental treatment, orthopedic surgery, sports medicine, and urology.

16. Over the years, MiMedx has spent millions of dollars researching and developing its proprietary placental tissue-based products and processes, and devotes significant financial resources each year in marketing as well.

17. Because of the substantial expertise, investment of time, effort and financial resources required to bring new regenerative bioactive healing products and processes to the market, MiMedx has sought and secured an extensive patent portfolio related to its innovative tissue technology and products.

18. MiMedx has also conducted extensive clinical and laboratory tests on its tissue graft products and is dedicated to providing safe, superior allografts.

19. MiMedx has implemented strict quality controls on the tissue it uses. Such controls include the implementation of a quality management system in compliance with both the Food and Drug Administration and the American

Association of Tissue Banks. Using this quality management system, MiMedx maintains strict control over each step of the manufacturing process.

20. MiMedx has also established guidelines for donor eligibility, screening and testing. All donor records and test results are reviewed by MiMedx before the release of the tissue. Only tissues that are deemed suitable for transplant are released for use.

21. Because of MiMedx's commitment to the development and testing of its products, MiMedx has become acclaimed for its novel placental tissue-based products. Indeed, MiMedx's products are some of the most well-known and well-respected in the industry.

22. Over the years, MiMedx has also diligently expanded and built its trade name and trademarks with respect to its placental tissue-based products, such that the commercial market has come to identify MiMedx's product lines with MiMedx.

23. MiMedx's product lines include EpiFix® and AmnioFix®, which are tissue grafts processed from human amniotic membrane that is derived from donated placentas using MiMedx's proprietary technology.

24. MiMedx processes the human amniotic membrane through a proprietary system to produce a safe and effective tissue product, which is

commonly referred to as an "allograft." MiMedx's products are utilized in a vast number of clinical treatments including, but not limited to, advanced wound care, orthopedic/spine surgery, and sports medicine applications. In each of these areas, and many more, MiMedx's products help to reduce inflammation, enhance healing and reduce scar tissue formation, among other benefits.

## II. THE PATENT-IN-SUIT

25. MiMedx has an extensive patent portfolio, including the Patent-in-Suit, covering placental tissue-based products.

26. On April 29, 2014, the USPTO duly and legally issued United States Patent No. 8,709,494 ("'494 Patent"), entitled "Placental Tissue Grafts." The '494 Patent names John Daniel as an inventor.

27. The '494 Patent has been assigned to MiMedx, and MiMedx has standing to sue and recover damages for infringement of the '494 Patent and pursue any and all causes of actions and remedies, either legal and/or equitable, related thereto. A true and correct copy of the '494 Patent is attached herein as Exhibit A.

## III. INFRINGEMENT OF THE PATENT-IN-SUIT

28. Upon information and belief, Vivex is a manufacturer and/or distributor of placental tissue-based products.

29. Upon information and belief, Vivex is a customer of, and distributor for, Bone Bank with respect to, among other things, placental tissue-based products including the Cygnus™ product.

30. Upon information and belief, Vivex markets, sells, and/or offers to sell the Cygnus™ product in the United States in and this judicial district.

31. Upon information and belief, at least one version or iteration of the Cygnus™ product is a placental amnion-based tissue graft product comprising two layers of amnion.

32. Upon information and belief, Vivex's placental tissue graft products including Cygnus™ are processed such that the native amnion layer is separated from the native chorion layer.

33. Upon information and belief, and based on visual observation, Vivex's placental tissue graft products including Cygnus™ are processed such that each amnion layer is cleaned and washed whereby blood and extraneous tissue are removed.

34. Upon information and belief, Vivex's placental tissue graft products including Cygnus™ are processed to minimize cell damage and thereby retain certain cellular layers, including the epithelial cellular layer and the fibroblast cellular layer.

35. Upon information and belief, Vivex's placental tissue graft products including Cygnus™ are dehydrated, as they are neither cryopreserved nor freeze dried.

36. Upon information and belief, Vivex's placental tissue graft products including Cygnus™ are laminated to make them suitable for their intended use.

37. Upon information and belief, Vivex has infringed and/or continues to infringe one or more claims of the '494 Patent by manufacturing, using, selling, and/or offering for sale placental tissue-graft products embodying one or more claims of the '494 Patent, including but not limited to Cygnus™, in the United States and in this judicial district.

38. Upon information and belief, Vivex has been on actual notice of the '494 Patent since at least as early as May 16, 2014, when MiMedx filed a Complaint against Bone Bank in *MiMedx Group, Inc. v. Tissue Transplant Technology, Inc.*, No. 1:14-cv-0464 (W.D. Tex.).

39. Additionally, upon information and belief, Vivex has had constructive knowledge of the Patent-in-Suit at least by virtue of the identification of the Patent-in-Suit on the AmnioFix® and EpiFix® product labels, package information, and/or marketing materials by referencing www.mimedx.com/patents under the heading "Amniotic Membrane Allograft Product Lines."

40. Upon information and belief, Vivex has acted and continues to act without a reasonable basis for believing that they would not be liable for infringing the Patent-in-Suit.

**COUNT I**
**(INFRINGEMENT OF U.S. PATENT NO. 8,709,494)**

41. MiMedx repeats and incorporates by reference each and every allegation of Paragraphs 1 through 40 of this Complaint, as though fully set forth herein.

42. MiMedx is the sole owner of the entire right, title, and interest in and to the ’494 Patent, including the right to sue and recover for any and all infringements thereof.

43. Upon information and belief, Vivex has infringed and/or continues to infringe, either literally or under the doctrine of equivalents, one or more claims of the ’494 Patent by making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, at least the Cygnus product, which embodies one or more claims of the ’494 Patent in violation of 35 U.S.C. § 271.

44. For example, claim 9 of the ’494 Patent is directed to a dehydrated, laminated, placental tissue graft comprising two or more layers of amnion and/or chorion directly laminated to each other, wherein at least one layer is an amnion layer which retains an epithelial cellular layer. The Cygnus™ product embodies

the claimed invention, without limitation, by comprising two or more layers of amnion that are directly laminated to each other, wherein both amnion layers continue to have a layer of epithelial cells.

45. MiMedx has been damaged by Vivex's past and continuing infringement of the '494 Patent in an amount to be determined at trial.

46. MiMedx has been and continues to be irreparably injured by Vivex's past and continuing infringement of the '494 Patent, and Vivex's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

47. MiMedx is entitled to monetary damages from Vivex's unauthorized infringement to the extent MiMedx is not adequately compensated based on other lawsuits and in an amount to be determined at trial.

48. Upon information and belief, Vivex has been on actual notice of the '494 Patent since at least as early as May 16, 2014, when MiMedx filed a Complaint against Bone Bank in *MiMedx Group, Inc. v. Tissue Transplant Technology, Inc.*, No. 1:14-cv-0464 (W.D. Tex.).

49. Additionally, upon information and belief, Vivex has had constructive knowledge of the Patent-in-Suit at least by virtue of the identification of the Patent-in-Suit on the AmnioFix® and EpiFix® product labels, package information,

and/or marketing materials by referencing www.mimedx.com/patents under the heading “Amniotic Membrane Allograft Product Lines.”

50. Upon information and belief, Vivex acted despite an objectively high likelihood that its actions constituted infringement of the ’494 Patent. Upon information and belief, Vivex’s risk of intentionally infringing the ’494 Patent was either known or so obvious that it should have been known to Vivex. Accordingly, Vivex’s infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the ’494 Patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys’ fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

A. Enter judgment that Defendant has infringed one or more claims of the ’494 Patent and that Defendant’s infringement has been willful;

B. Award Plaintiff damages in an amount to be proven at trial that will adequately compensate Plaintiff for Defendant’s infringement to the extent MiMedx is not adequately compensated based on other lawsuits, but under no

circumstances an amount less than a reasonable royalty, as authorized by 35 U.S.C. § 284;

C. Increase the damages sustained by Plaintiff up to three times the amount of their actual damages, as authorized by 35 U.S.C. § 284;

D. Enjoin Defendants, and all persons acting in concert with the Defendants, from the manufacture, use, sale, offer for sale, or importation of the accused products;

E. Award Plaintiff its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285;

F. Award Plaintiff pre-judgment interest and costs pursuant to 35 U.S.C. § 284; and

G. The Court grant such other, different, and additional relief as the Court deems just and proper.

Dated: April 1, 2016

By: */s/ Matthew W. Howell*

Wesley C. Achey (Ga. Bar No. 141284)
Matthew W. Howell (Ga. Bar No. 607080)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Fax: 404-881-7777
Email: wes.achey@alston.com
Email: matthew.howell@alston.com

Of Counsel:
Deepro R. Mukerjee
(NY Bar No. 4046157)
Poopak Banky
(NY Bar No. 4683231)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Fax: 212-210-9444
Email: deepro.mukerjee@alston.com
Email: paki.banky@alston.com

*Attorneys for Plaintiff MiMedx Group, Inc.*